McINTOSH ET AL., RESPONDENTS, *v.* WEAVER ET AL., APPEL-
LANTS.

(No. 7,883.)

(Submitted April 4, 1939.   Decided May 3, 1939.)

[90 Pac. (2d) 169.]

*Mr. F. F. Haynes,* for Appellant, submitted a brief, and argued the cause orally.

*Mr. J. J. McIntosh* and *Mr. Rudolph C. Harken,* for Respondents, submitted a brief; *Mr. John W. Chapman,* of Counsel, argued the cause orally.

MR. JUSTICE ERICKSON delivered the opinion of the court.

This action was brought to foreclose a certain mortgage given by the defendants Lawrence M. Weaver and Lydia C. Weaver, his wife, to plaintiffs. The defendant M. V. Kelly claimed no interest in the property and hereafter, in referring to defendants, we refer only to Lawrence M. Weaver and Lydia C. Weaver, his wife.

The answer of the defendants admits the execution of the notes and mortgage sued on, and sets up as a separate and affirmative defense the execution of a certain agreement made in 1935 between the parties relative to the mortgage. A reply was interposed to the answer, in which the plaintiffs admit the execution of the 1935 agreement. After trial before the court, a judgment was entered for the plaintiffs and a decree of foreclosure was made. This appeal is from the judgment and decree.

The mortgage sued upon was the usual form of real estate mortgage, with a provision therein, in addition to the other provisions, that the mortgagors were to pay all taxes and assessments upon the land described in the mortgage before they became delinquent, and that they were to keep the buildings on the premises properly insured. The mortgage further provided that in the event there was default in the payment of taxes or insurance premiums, the mortgagees might, without notice, declare the balance of the principal amount named in the notes and mortgage immediately due and payable, and in such case the mortgagees were authorized to foreclose the mortgage at once.

In the complaint it was alleged that the taxes for the last half of 1935 and for all of the year 1936 on the premises in question had not been paid by the defendants as provided in the mortgage, and that the buildings on the premises had not been insured in accordance with the terms of the mortgage. These allegations were established by the testimony.

The determination of this lawsuit must rest upon an interpretation of the contract of December 2, 1935, which the defendants pleaded in their affirmative defense, and the effect of it on the rights of the parties under the mortgage. This agreement in full is as follows:

"It is agreed by and between Lawrence M. Weaver and Lydia C. Weaver, his wife, parties of the first part and Alex A. McIntosh and J. J. McIntosh, the parties of the second part, that for and in consideration of the agreements herein contained and the terms hereof that that certain real estate mortgage, dated October 15, 1931, between Lawrence M. Weaver and Lydia C. Weaver, his wife, as mortgagors and Barbara McIntosh, Alex McIntosh and J. J. McIntosh, as mortgagees (and which mortgage is now owned by the parties of the second part), securing certain promissory notes amounting to the total principal sum of $11,500.00, and covering 5,698.42 acres of land located in Rosebud County therein described, recorded in Book 33 of Mortgages at page 180 of the records of the County Clerk and Recorder of Rosebud County, Montana, shall be renewed by the execution between the parties hereto of a new mortgage in the

principal sum of $11,500.00 to secure a promissory note or notes in the principal sum of $11,500.00 drawing 4% per annum interest from December 1, 1935, payable as follows: The sum of $600.00 on the first day of December, 1936, the sum of $600.00 due December 1, 1937, the sum of $600.00 due December 1, 1938, and the sum of $800.00 on the first day of December of each and every succeeding year thereafter, said payments to be applied first upon the interest that has accrued up to said date of each payment at the rate of 4% per annum, and the balance of such payments to be applied upon the principal due upon said mortgage, said payments to be made until the full amount of the principal and interest due upon said mortgage has been fully paid, that is, upon an amortization plan;

"It is further agreed that the said Lawrence M. Weaver shall immediately pay all delinquent taxes upon said premises in said mortgage described, together with the first installment of the 1935 taxes, amounting to the total sum of $1,131.88;

"It is further agreed that at any time hereafter the parties of the first part are able to refinance said mortgage by the payment of $8,500.00 in cash to second parties, that second parties shall thereon release and discharge said note or notes and mortgage, and that at the time of such refinancing of said mortgage any payments theretofore made on account of principal shall be credited upon said $8,500.00 and deducted therefrom;

"It is agreed that said new mortgage shall be drawn up and executed as soon as J. J. McIntosh is able to prepare the same, and shall be in accordance with the general terms above set forth; which constitutes a memorandum of the agreements of the parties hereto; that said new mortgage is to be signed by both first parties hereto, but the note or notes securing the same only to be signed by first party, Lawrence M. Weaver; that upon the execution and delivery of said new note or notes and mortgage, said existing mortgage is to be released and discharged of record and the notes securing the same to be cancelled and returned to first party;

"It is agreed that in lieu of the execution of a new mortgage and note or notes securing the same as above provided that sec-

ond party shall have the option of drawing up an extension agreement between the parties hereto, incorporating in such extension agreement the terms and provisions of the agreement as above set forth.

"Dated this 2nd day of December, 1935.

"LAWRENCE M. WEAVER and
LYDIE C. WEAVER,
"By P. B. WEAVER, their Atty.
"ALEX A. MCINTOSH
"J. J. MCINTOSH."

The appellants argue that the last two paragraphs of this agreement call for the preparation of a new mortgage and note, or the drawing up of an extension agreement by the plaintiffs as a condition precedent to a foreclosure action. In other words, they contend that the plaintiffs must prepare one or the other of these instruments incorporating the provisions of the agreement and present it to the defendants for signature, and that the defendants must fail to sign the instrument so presented before foreclosure action can be brought.

It will be noted that the consideration on the part of the defendants· for this new agreement, which we will hereinafter refer to as Agreement Exhibit A, was the payment of taxes which had become delinquent while the defendants were in possession of the land under the mortgage agreement, and which taxes by the mortgage they had agreed to pay. The delinquent taxes covered by this agreement were paid by the defendants. Respondents argue that the Agreement Exhibit A was without consideration, as the defendants were already bound by the mortgage to pay the taxes. The determination of that question is not necessary to a decision in this case, as will later appear.

Let us examine the situation under the assumption that the payment of the taxes was a sufficient consideration for the agreement. From a reading of the agreement it is apparent that the purpose of the agreement was to, first, give the defendants additional time for the payment of the debts secured by the mortgage; second, to reduce the interest rate; third, to re-

duce the principal in the event the defendants might be able to refinance the mortgage by a loan; and, lastly, the execution of new notes and a new mortgage, or an extension of the old mortgage incorporating the terms of the new agreement.

The plaintiffs had the option of drawing up a new note and mortgage different from the old mortgage only in so far as time of payment of principal and interest was concerned, and which new mortgage and note would supplant the old, or of drawing up an extension agreement extending the old mortgage by incorporating in it the provisions of Agreement Exhibit A. The testimony shows that plaintiffs advised Weaver that they chose to exercise the option to draw an extension of the mortgage, rather than the first option to prepare new notes and a new mortgage. This agreement recognizes the validity of the mortgage sued on and of its provisions, and only purports to affect the provisions as to time and manner of payment, interest and the amount of the principal in the event of certain contingencies. Granting that mere failure to pay anything on the interest and principal might not, in view of the agreement, warrant foreclosure, what was the effect of defendants' failure to pay the 1935–36 taxes and to insure the buildings as in the mortgage provided? Did the execution of the agreement prevent foreclosure for breach of conditions in the mortgage not affected by the agreement? We think not.

Defendants' claim is that they did not comply with these provisions of the mortgage because the plaintiffs had failed to draw the mortgage extension agreement, and that the drawing of the new instrument by plaintiffs was a condition precedent to their right to a foreclosure action. The points might be well taken had defendants not waived any provisions of the contract as to the duties of the plaintiffs under the last paragraph of the agreement, and had they not by their conduct treated the Agreement Exhibit A from its execution as one merely giving them an extension of time in which to make their payments. It is to be noted that defendants did not make any of the payments provided for in this agreement, except of the taxes then delinquent. A reading of the testimony, even without any

presumption that the finding of the trial judge was correct, can lead to but one conclusion, and that is that plaintiffs at all times were ready and willing—even anxious—to execute the extension agreement provided for in Agreement Exhibit A. Defendant Weaver, on the other hand, treated the execution of the extension agreement as unimportant. The chief purpose of Exhibit A to Weaver, by his own testimony, it may fairly be said, was to give him time in which to effect a Federal Land Bank Loan on the property. On direct examination, when asked if he had ever demanded of the plaintiffs that they prepare the extension agreement, he said: "Well, of course, as long as I had this application for a Land Bank loan I was willing to accommodate Mr. McIntosh and also let this thing ride along until we determined whether we were going to get a Land Bank loan." And upon cross-examination he testified, when questioned about the provision in Exhibit A giving the plaintiffs an option to draw up an extension of the old mortgage rather than a new one: "Well, I know 'that it was incorporated in there, sure. That was in there for the purpose of letting things run along until it was determined whether I could get a Land Bank loan or whether I couldn't—that was my interpretation."

The testimony on the part of Weaver himself is full of references to the Land Bank loan, and to letting the matter run along pending the outcome of the application. Typical of his responses on this question was his reply when questioned as to statements he was supposed to have made to the effect that he did not want the new agreement drawn up: "No, I never did. I might have said it was immaterial about the way it run until it was determined whether I was going to get a loan."

On December 18, 1936, Weaver wrote a letter to plaintiff J. J. McIntosh, Defendants' Exhibit C, in which he said: "I figure my debt in reality 8500.00. At 4% the interest would amount to $340.00. Of course, if I could make the payment based on 11500.00 I would do so but since I cant must figure out the best I can. What if I would pay you & Alex 2% on 8500.00 and just extend that agreement made a year ago one full year. That is, make it operative from Dec. 1st 1936 instead of last

year that date." This letter bears out further the idea that Weaver considered Exhibit A as an agreement merely extending the time and manner of payment under the original mortgage.

The testimony of J. J. McIntosh, one of the plaintiffs and a lawyer, is that on numerous occasions he tried to get Weaver to spend some time with him in his office to get the extension agreement drawn. It is true that on some of these occasions Weaver apparently had no time to attend to the matter, but each time he expressed the idea that drawing the new agreement was not important. Plaintiffs clearly demonstrated to Weaver their anxiety to have the agreement drawn on a number of occasions, and surely some time in the year and a half Weaver could have found time to go over provisions to be incorporated in the extension agreement with plaintiffs and to get it executed, had he wanted it drawn.

The inference forces' itself upon one as the testimony is read that Weaver was stalling off the preparation of the extension agreement. He plainly had by his action in this respect waived any right he may have had under the last paragraph of Agreement Exhibit A to have the plaintiffs submit the extension agreement as a condition precedent to their right to foreclose the mortgage for breaches of the agreement on the part of the mortgagors to pay taxes and insurance.

Defendant Weaver treated the Agreement Exhibit A all of the time as a mere agreement extending the time and manner of payment. That this is so is indicated not only by the course of action above discussed, but also by an agreement executed on April 9, 1937, in which he agreed to pay the taxes that had become delinquent since the execution of Agreement Exhibit A, and to pay to the plaintiffs the sum of $300, "which is to be applied in full payment of the interest accrued on said mortgage under said agreement of December 2, 1935, up to December 1, 1936, and leave remaining the original principal sum still due of $11,500.00 * * *. That the next payment under the said agreement shall be payable as therein set forth, to-wit, December 1st, 1937." This instrument demonstrates that defendant Weaver was not demanding that plaintiffs pre-

pare the extension agreement before he would pay anything on the mortgage, or pay the taxes or provide insurance.

The plaintiffs testified that on the date of the last agreement they again urged upon Weaver the necessity for the execution of the extension agreement, but he put them off by saying that the execution of the mortgage extension agreement was not important, and also that he would sign nothing until his brother, a lawyer in Nebraska, had been consulted. The brother's testimony reveals that he had only acted for the defendant Weaver in drawing Exhibit A, and that he had not acted for him since. The talk of submitting the proposed extension to the brother, in the light of Weaver's other conduct, was again apparently for the purpose of stalling off the preparation of the agreement.

The lower court was correct in holding that the agreement of 1935 was, as treated by the parties, merely an extension agreement covering time and manner of payment, and that the right to have the mortgage extension agreement drawn was waived by the defendants, and its presentation to them for their signatures was not a condition precedent to the foreclosure of the mortgage for breaches of provisions of the mortgage as to insurance and taxes.

The defendants on argument conceded that if Exhibit A merely extended the time of payment, then the foreclosure of the mortgage could be had for breaches of the conditions in the mortgage as to taxes and insurance.

The defendants in their brief charge bad faith on the part of plaintiffs, principally because defendants spent some money on an irrigation system. The defendants say that they did so, if not at the plaintiffs' request, at least with their full knowledge and approval, and imply that they were tricked into doing so by the Agreement Exhibit A. The record does not disclose this to be the fact. Some testimony was given by Weaver to the effect that he spent some money on a ditch; but, in addition to plaintiffs' testimony, there is a letter in the record which reveals that plaintiffs specifically urged him not to spend any money on the ditch, but to pay the taxes

instead. Weaver testified that Alex McIntosh at the office of J. J. McIntosh asked him not to spend money on the system, and the finding of the lower court that Weaver did this work entirely on his own initiative and against the urgings of the plaintiffs is sustained by the record.

As further evidence that the plaintiffs were not acting in bad faith, an examination of the record discloses that although the mortgage was executed in 1931, nothing was ever paid by the defendants on either principal or interest; that, with the exception of the delinquent taxes due at the time Exhibit A was executed, defendants have paid nothing under that agreement or the subsequent agreement of April 9, 1937, and that, in spite of that, the plaintiffs carried the defendants for over a year and a half before bringing foreclosure proceedings, and that in the meantime they made every effort to get the defendants to join them in working out the terms of a mortgage extension and for the execution of the extension they might draw up.

Since, as we have said, even though Exhibit A was based on a valid consideration, the execution of the agreement would not preclude foreclosure for breaches of conditions in the mortgage not covered by the agreement, there is no necessity for determining whether the lower court was in error in holding that the payment of delinquent taxes was not sufficient consideration for the new agreement.

The judgment is affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES STEWART, ANGSTMAN and MORRIS concur.